Appeal No. 22-1345

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

CHINA CUSTOM MANUFACTURING INC.,
GREENTEC ENGINEERING LLC,
*Plaintiffs-Appellants*,

v.

UNITED STATES,
ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE
*Defendants-Appellees*

Appeal from the United States Court of International Trade
No. 20-cv-00121, Judge Stephen A. Vaden

**Combined Petition for a Panel Rehearing and Petition
for En Banc Review under Federal Rule of Appellate Procedure
Rule 35 (b) and (H)**

George R. Tuttle Sr
Law Offices of George R. Tuttle, A PC
3950 Civic Center Drive, Suite 310
San Rafael, CA 94903
(415) 288-0428

March 31, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-1345 |
| **Short Case Caption** | China Custom Manufacturing Inc. v US |
| **Filing Party/Entity** | China Custom Manufacturing, Inc. and Greentec Engineering LLC |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/31/2023

Signature: /s/ George R. Tuttle, Sr.

Name: George R. Tuttle, Sr.

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| China Custom Manufacturing, Inc. | | |
| Greentec Engineering, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

Case: 22-1345     Document: 70     Page: 3     Filed: 03/31/2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable       ☐     Additional pages attached

| | | |
|---|---|---|
| George R. Tuttle, III.<br>Law offices of George R. Tuttle, A P.C. | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑     None/Not Applicable       ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable       ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Case: 22-1345     Document: 70     Page: 4     Filed: 03/31/2023

# Table of Contents

I.      THE ORDERS .......................................................................... 2

II.     THE COURT IN CCM CAFC, CONTRARY TO LAW,
        OMITTED ANY ANALYSIS OF THE UNAMBIGUOUS
        LANGUAGE OF THE FINISHED MERCHANDISE EXCLUSION
        UNDER THIS LONG-STANDING AND PRIMARY RULE OF
        CONSTRUCTION ..................................................................... 3

III.    THE UNAMBIGUOUS PLAIN MEANING OF THE FINISHED
        MERCHANDISE EXCLUSION EXCLUDES SOLAR PANEL MOUNT
        ASSEMBLES FROM THE ORDERS. ....................................... 6

        A.    The language of the finished merchandise exclusion is
              unambiguous. ................................................................ 6

        B.    The language of the antidumping and countervailing duty
              orders is unambiguous. ................................................. 7

        C.    The unambiguous analysis of the finished merchandise
              exclusion applies to the solar panel mounts. ................. 9

              1.  The record evidence before Commerce confirmed that
              the CCM solar panel mount assemblies "contain aluminum
              extrusions as parts." ..................................................... 9

              2.  The record evidence further demonstrates that the CCM
              solar panel mount assemblies are "fully and permanently
              assembled and completed at the time of entry." ........... 11

IV.     THE CCM CAFC DECISION IS CONTRARY TO THE LONG-
        STANDING UNAMBIGUPUS RULE CONSTRUCTION OF
        ANTIDUMPING AND COUNTERVAILING DUTY ORDERS AS
        APPLIED IN WHIRLPOOL III, DUFERCO, ECKSTROM,
        WHEATLAND, AND ERICSSON ......................................... 12

        A.    The Holding of Shenyang 2015 .................................... 13

        B.    The CCM Commerce Scope Decision ........................... 14

        C.    CCM focused only on the parts language of the finished
              merchandise exclusion ................................................. 15

D.    CCM argues that the Commerce's final scope decision merged the finished merchandise exclusion with the finished goods kit exclusion by requiring all of the Eco Fasten components to be fully and permanently assembled the time of entry thus requiring a complete final finished product for the finished merchandise exclusion rather than a part ............ 15

V.    A CONSIDERATION BY THE FULL COURT IS NECESSARY TO SECURE AND MAINTAIN UNIFORMITY OF THE COURT'S DECISIONS REGARDING THE UNAMBIGUOUS PLAIN LANGUAGE RULE .................................................................. 16

VI.    A CONSIDERATION BY THE FULL COURT IS NECESSARY TO SECURE AND MAINTAIN UNIFORMITY OF THE COURT'S DECISIONS THAT "A FINAL ORDER MAY NOT BE INTERPRETED 'IN A WAY CONTRARY TO ITS TERMS,' NOT IN A WAY 'SO AS TO CHANGE THE SCOPE OF THAT ORDER." ................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82
 (Fed. Cir. 2012) ........................................................................ 1, 5, 6

*China Custom Manufacturing Inc., Greentec Engineering LLC v.
 United States, Aluminum Extrusions Fair Trade Committee, 61 F.4th 956
 (Fed. Cir. 2023)* ................................................................................ 1

*Columbia Aluminum Prods., LLC v. United States*, 536 F.Supp. 3d 1346,
 (Ct. Int'l Trade 2021) ........................................................................ 6

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) ............. passim

*Eckstrom Indus. v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) ..................... 2, 12

*Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778
 (Fed. Cir. 1995) .................................................................... 2, 14, 17

*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017) ................. 1

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,*
 776 F.3d 1351 (Fed. Cir. 2015) .................................................... passim

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) ................... 2

*Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018) ................. passim

**Other Authorities**

*Aluminum Extrusions From the People's Republic of China: Antidumping Duty
 Order*, 76 Fed. Reg. 30650 (May 26, 2011) .................................................. 6, 7, 8

*Aluminum Extrusions From the People's Republic of China: Countervailing Duty
 Order*, 76 Fed. Reg. 30653 (May 26, 2011) .................................................. 6, 7, 8

*Concise Oxford American Dictionary*, Third Edition (2006) ................................... 8

*Webster's New World College Dictionary,* Fourth Edition (2002) ........................... 8

Appeal No. 22-1345

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

CHINA CUSTOM MANUFACTURING INC.,
GREENTEC ENGINEERING LLC,
*Plaintiffs-Appellants*,

v.

UNITED STATES,
ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE
*Defendants-Appellees*

Appeal from the United States Court of International Trade
No. 20-cv-00121, Judge Stephen A. Vaden

**Combined Petition for a Panel Rehearing and Petition
for En Banc Review under Federal Rule of Appellate Procedure
Rule 35 (b) and (h)**

**STATEMENT OF COUNSEL PURSUANT TO RULE 35(b)**

The panel decision in *China Custom Manufacturing Inc., Greentec Engineering LLC v. United States, Aluminum Extrusions Fair Trade Committee*, 61 F.4th 956 (Fed. Cir. 2023), conflicts with the following decisions of this Court that (1) unambiguous plain language rule, *see Whirlpool Corp. v. United States*, 890 F.3d 1302 (Fed. Cir. 2018), *Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017), *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82 (Fed. Cir. 2012); and (2) "a final order may not be interpreted 'in a way contrary to its terms,' not in a way 'so as to change the scope of that order." *See Whirlpool Corp.*

*v. United States*, 890 F.3d 1302 (Fed. Cir. 2018), *Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002), *Eckstrom Indus. v. United States*, 254 F.3d 1068 (Fed. Cir. 2001), *Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998), and *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778 (Fed. Cir. 1995). Thus, consideration by the full court is necessary to secure and maintain uniformity of the court's decisions**.**

The CCM CAFC decision involves one or more questions of law of exceptional importance involving the primary rule of construction of antidumping and countervailing duty orders utilizing unambiguous language to describe inclusions or exclusions from the orders. The CCM CAFC holding that the statement in *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States,* 776 F.3d 1351 (Fed. Cir. 2015) ("*Shenyang 2015")* that "parts or subassemblies cannot be finished merchandise …" precludes the application of the unambiguous exclusion to then finished merchandise exclusion and conflicts with authoritative decisions of this court which have addressed this issue.

## I.      THE ORDERS

> The Orders define as subject merchandise "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from" specified aluminum alloys. Antidumping Duty Order, 76 Fed. Reg. at 30,650. The Orders further provide:
>
> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after

importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods "kit" defined further below.

The Orders contain several exclusions from their scope, and two are pertinent here. The "finished merchandise" exclusion states:

The scope . . . excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing materials, and solar panels." 76 Fed. Reg. 30,651; 76 Fed. Reg. 30,654.

This "finished merchandise" exclusion is separate and distinct from the exclusion for a "finished goods kit," which is defined in the Orders as "a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." 76 Fed. Reg. 30651; 76 Fed. Reg. 30654.

This "finished goods kit" exclusion (but <u>not</u> the "finished merchandise" exclusion) includes an express "fasteners" exception pursuant to which "[a]n imported product <u>will not be considered a 'finished goods kit'</u> and thus excluded from the scope of the investigation <u>merely by including fasteners such as screws, bolts, etc</u>. in the packaging with an aluminum extruded product." 76 Fed. Reg. 30651; 76 Fed. Reg. 30654.

## II.    THE COURT IN CCM CAFC, CONTRARY TO LAW, OMITTED ANY ANALYSIS OF THE UNAMBIGUOUS LANGUAGE OF THE FINISHED MERCHANDISE EXCLUSION UNDER THIS LONG-STANDING AND PRIMARY RULE OF CONSTRUCTION

The analysis of the aluminum extrusion order in *Whirlpool Corp. v. United*

*States*, 890 F.3d 1302 (Fed. Cir. 2018) ("Whirlpool III") was based on the unambiguous language of the Orders. Judge Prost noted that "we must determine …whether Commerce applied the proper interpretation of the exclusions to the Orders and, if so, whether substantial evidence supports its finding that the exclusions do not apply." *Whirlpool III*, 890 F.3d at 1308 ("Commerce's inquiry begins with the Orders' scope to determine whether it contains an ambiguity," and "if the scope is unambiguous, the plain meaning of the Orders' language governs.").

The court initially found that CIT erred when it stated that assembly processes were absent from the specified cost-extrusion processes. The court explained that the general scope language unambiguously includes aluminum extrusions that are part of an assembly. The Orders explicitly include aluminum extrusions "that are assembled after importation" in addition to "aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies." Therefore, the court held that the interpretation relied on by CIT in *Whirlpool I* was improper, and substantial evidence supports Commerce's finding in its August 2014 Scope Ruling that the general scope language includes Whirlpool's assembled handles.

First, the court stated, "… with respect to the finished goods kit exclusion we agree with the CIT that "[b]ecause Whirlpool's assembled door handles are not imported in disassembled form, the finished goods kit exclusion is inapplicable." J.A. 47. Whirlpool's handles and end caps do not enter unassembled as a packaged

combination of parts. They enter assembled. <u>Accordingly, Whirlpool's assembled handles do not meet the unambiguous terms of the finished goods kit exclusion.</u> (Emphasis added)

Second, the court stated, with respect to the finished merchandise <u>exclusion "we also agree with the CIT"</u>. The Orders define finished merchandise as "merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels." AD Order, 76 Fed. Reg. at 30,651 (Emphasis added).

Third, the Court ruled de novo and as a matter of law that the fasteners exemption to the finished good kit exclusion <u>unambiguously</u> does not apply to the finished merchandise exclusion: (pp 1309-10) and remanded the decision to Commerce to provide an explanation of the finished merchandise exclusion. *Whirlpool III*, 890 F. 3d at 1309-11.

In summary, "if [the scope of an order] is not ambiguous, the plain meaning of the language governs." *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012).

## III.  THE UNAMBIGUOUS PLAIN MEANING OF THE FINISHED MERCHANDISE EXCLUSION EXCLUDES SOLAR PANEL MOUNT ASSEMBLES FROM THE ORDERS.

### A.  The language of the finished merchandise exclusion is unambiguous.

"If the scope is unambiguous, the plain meaning of the Orders' language governs." *See Duferco Steel*, 296 F.3d at 1095; *see also Whirlpool III*, 890 F.3d at 1308. "If Commerce determines that the language at issue is not ambiguous, it states what it understands to be the plain meaning of the language, and the proceedings terminate." *See ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 84 (Fed. Cir. 2012).

Solar panels are clearly identified as the exemplar of finished merchandise exclusion. AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654 ("The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels"). The solar panel mount assemblies in this appeal were clearly encompassed in the finished merchandise exclusion,  Commerce nevertheless insisted in the First Remand Redetermination that because of the specific mention of the door and the window in the language of the finished merchandise exclusion, "[t]here is no need to further analyze whether the enumerated products in the finished merchandise exclusion work in conjunction

with other products, and no requirement that, for example, a window with glass or a door with glass or vinyl be assembled into a house to satisfy the finished merchandise exclusion." *See Columbia Aluminum Prods., LLC v. United States*, 536 F.Supp. 3d 1346, 1356 (Ct. Int'l Trade 2021) (quoting First Remand Redetermination at 46).

## B. The language of the antidumping and countervailing duty orders is unambiguous.

This Petition involves the issue of whether the CCM solar panel mount assemblies are properly included within the scope of the Aluminum Extrusion Orders. The express exclusion that is directly relevant to this appeal is the exclusion for "finished merchandise," which provides (emphasis added) that the "scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing materials, and <u>solar panels</u>." 76 Fed. Reg. 30,651; 76 Fed. Reg. 30,654.

It is manifest from the record, and apparently uncontested, that the CCM solar panel mount assemblies satisfy each of the requirements in the finished merchandise exclusion.

> The scope also excludes <u>finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed</u> at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and <u>solar panels</u>.

76 Fed. Reg. 30,651; 76 Fed. Reg. 30,654 (emphasis added).

Accordingly, pursuant to this unambiguous language of the orders, the CCM solar panel mount assemblies qualify as "finished merchandise" if (a) the mounts meet the common meaning definitions of finished merchandise," (b) the mounts "contain aluminum extrusions as parts," and (c) the mounts are "fully and permanently assembled and completed at the time of entry." The record before Commerce established each of these requirements was satisfied and that a contrary decision would be unsupported by substantial record evidence and/or otherwise not in accordance with the law.

The *Webster's Third New International Dictionary,* Fourth Edition (2002) defines the term "finished" as a product that is "ready for packing, shipment, or sale," and the *Concise Oxford English Dictionary,* Third Edition (2006) similarly defines "finished" as a product "[t]hat has passed through the last process or stage of manufacture or elaboration. "The common meaning of the word merchandise is defined in the online *Concise Oxford English Dictionary* as a product "[t]hat has passed through the last process or stage of manufacture or elaboration." Solar panel mount assemblies are imported and ready for sale, Appx 286-287, and subsequent installation in an Eco Fasten solar panel system. Appx 292-298.

**C.    The unambiguous analysis of the finished merchandise exclusion applies to the solar panel mounts.**

The record establishes that the CCM solar panel mount assemblies are unambiguously described by the finished merchandise exclusion:"

**1.    The record evidence before Commerce confirmed that the CCM solar panel mount assemblies "contain aluminum extrusions as parts."**

The record before Commerce in the CCM scope request established that the CCM solar panel mount assemblies consist of finished merchandise as extrusions as parts permanently assembled aluminum and non-aluminum parts (steel bolts, nuts, and washers) (Exhibit 1A, picture of the mount, front view (Appx 258-259); (Exhibit 1B, picture of the mount, side view (Appx 260-262); schematic of the monument identifying each part in the front and side view (Appx 262-264).

Hence, the CCM solar panel mount assemblies (1) consist of finished merchandise containing aluminum extrusions as parts that are fully and fully assembled and complete at the time of entry, (2) are ready for installation; and (3) consist of parts as aluminum extrusions and non-extrusions ( machined stainless-steel bolts and nuts, which hold the mounts together and which attach through the extrusions to hold the mounts to the solar panels and to rails mounted on roofs. See the exhibits of the parts of the solar panel mounts such as the Pedestal (Appx 266-284)

The common meaning of "parts" defined in the *Concise Oxford American Dictionary*, Third Edition (2006) is "a piece or segment of something such as an object, activity, or period of time, which combined with other pieces make up the whole." The solar panel mount assemblies meet the unambiguous language of the finished merchandise as "parts". Such parts are described as included within the order as finished merchandise as extrusions as parts assembled into "final finished merchandise after importation." Specifically, the exclusionary language requires "finished merchandise as extrusions as parts that are fully and permanently assembled and complete at the time of entry." The word "parts" in the inclusion and exclusion language has the same common meaning. The unambiguous language of the exclusion for "finished merchandise" is defined and modified by "extrusions as parts" that are "fully and permanently assembled and complete at the time of importation. Thus, the unambiguous language of the exclusion requires that the finished merchandise consists of extrusions as parts that are fully assembled at the time of importation—which describe the solar panel mount assemblies as imported.

Moreover, the words "fully finished merchandise" in the inclusionary language purposely distinguishes the finished merchandise as extrusions as parts are fully and completely assembled at the time of importation. In contrast, in inclusionary language has no requirement relating to the physical condition of the parts that may or may not require further processing after importation and are

subsequently assembled into a "final finished product."   This distinction is

fundamental to an unambiguous analysis of the Orders and the finished merchandise

exclusion which applies only to finished merchandise as extrusions as parts "that are

fully and permanently assembled and complete at the time of entry."   Hence the

court in CCM reached a conclusion contrary to law that "[t]he solar panel mounts at

issue are parts or subassemblies for a downstream—the EcoFasten solar panel

mounting system—and thus are not a finished product that qualifies for the finished

merchandise exclusion."

> **2.    The record evidence further demonstrates that the CCM solar panel mount assemblies are "fully and permanently assembled and completed at the time of entry."**

The final requirement of the "finished merchandise" exclusion is that the

product be "fully and permanently assembled and completed at the time of entry."

The record establishes that the solar panel's mount assemblies are fully and

permanently assembled and completed at the time of entry. Exhibits 1A (Appx 258-

9 and Exhibit 1B (Appx 259 -260.)  First, no ambiguity exists w that the solar panel

mounts are described as <u>included</u> within the order as" Finished merchandise as <u>parts</u>

for <u>final finished</u> products that are assembled after importation" and are also plainly

described as <u>excluded</u> from the Orders as "extrusions as parts that are fully and

permanently assembled and complete at the time of entry." See Exhibits 1A and 1B.

The word "parts" in the inclusion and exclusion language has the same common

meaning. But the in-scope "parts for final finished merchandise assembled after importation" describes a solar panel system assembled <u>after importation</u> from the mounts, other Eco Fasten components and solar panels. The out-of-scope finished merchandise exclusion describes solar panel mount assemblies "as aluminum extrusions as parts that are fully and permanently assembled and completed at the time of importation."

In conclusion, there can be no reasonable doubt that CCM solar panel mount assemblies are described in the "unambiguous language of the final order," which this court has explained is the "cornerstone" of its analysis and "a predicate for the interpretive process." *Duferco Steel*, 296 F.3d at 1097 and *Eckstrom*, 254 F.3d at 1072.

## IV.   THE CCM CAFC DECISION IS CONTRARY TO THE LONG-STANDING UNAMBIGUPUS RULE CONSTRUCTION OF ANTIDUMPING AND COUNTERVAILING DUTY ORDERS AS APPLIED IN WHIRLPOOL III, DUFERCO, ECKSTROM, WHEATLAND, AND ERICSSON

The following are incorrect factual statements and unsupported legal conclusions in the decision: "that a 'part or subassembly, here a curtain wall unit, cannot be a finished product'—is divided into the legal conclusion ('a part or subassembly … cannot be a finished product') and the application of that legal conclusion to the facts ('here a curtain wall unit')." *See* Op. at *9 (citing *Shenyang 2015*, 776 F.3d at 1358).

### A.    The Holding of Shenyang 2015

After summarizing the decision of the trial court that curtain walls are 'parts'

for and subassemblies for completed curtain walls, the Court **noted** Commerce's

analysis[1] regarding whether Yuanda's merchandise fell into one of the enumerated

exclusions from the Orders and found that the parts of curtain walls subject to the

scope ruling did not satisfy the "finished merchandise" exclusion. *Shenyang 2015*,

776 F.3d at 1358.

> A single unit does not a curtain wall make, nor is it a finished
> product. As the CIT correctly explained, "[c]urtain wall units are
> [] undeniably components that are fastened together to form a
> completed curtain wall. Thus, they are 'parts for,' and
> 'subassemblies' for, completed curtain walls."

*See Shenyang 2015*, 776 F.3d at 1358 (citing *Shenyang CIT*, 961 F. Supp. 2d

at 1298). Then, the court stated that "[a] part or subassembly, here a curtain wall

unit, cannot be a finished product." *Id.*   Although the court in *Shenyang 2015*

analyzed whether the subject curtain wall units satisfy the finished merchandise

exclusion, the court (1) did not analyze nor mention the subassemblies provision and

the relationship between the subassemblies provision and finished merchandise

exclusion; and (2) did not implicate subassemblies in its final holding. *Shenyang*

---

[1]    Commerce explained that the CWC companies defined curtain wall as "an aluminum
extrusion framed non-weight bearing exterior wall" that is supported by the structure of the
building to which it is secured. Commerce also explained "curtain wall parts fall short of the final
finished curtain wall that envelopes [sic] the entire building structure. Certain curtain wall parts
are assembled into modules that are designed to be interlocked with other curtain wall parts, like
pieces of a puzzle." *See Shenyang 2015*, 776 F.3d at 1358.

2015, 776 F.3d at 1358.

In the court's finished merchandise analysis, the term "subassemblies" was described at the conclusion in passing for the first time. The analyzing section has never mentioned, introduced, nor identified "subassemblies." In summary, the unambiguous definition of subassemblies in the Order as "incomplete merchandise" does not apply to the solar panel mount assemblies which are excluded from the order under the unambiguous finished merchandise exclusion. This Shenyang statement is contrary to law and not supported by the facts on record.

## B.    The CCM Commerce Scope Decision

Although Commerce "enjoys substantial freedom to interpret and clarify its antidumping duty orders …, it may not change them." *See Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995), *as corrected on reh'g* (Sept. 1, 1997). "

Commerce, contrary to law, modified the finished merchandise exclusion to require a fully finished merchandise (the solar panel system) that satisfies the finished merchandise exclusion contrary to the unambiguous language of the finished merchandise exclusion.

Commerce further modified the unambiguous definition in the order of subassemblies defined as incomplete merchandise to "…merchandise which is 'designed for the sole purpose of becoming part of a larger whole.'" (Appx 053).

**C.    CCM focused only on the parts language of the finished merchandise exclusion**

The substance of the CCM argument is that "exclusionary language is given its full effect pursuant *Duferco*, which means that subassemblies are unambiguously defined as "incomplete merchandise" which excludes the mounts.

**D.    CCM argues that the Commerce's final scope decision merged the finished merchandise exclusion with the finished goods kit exclusion by requiring all of the Eco Fasten components to be fully and permanently assembled the time of entry thus requiring a complete final finished product for the finished merchandise exclusion rather than a part**

Appellants brief contended that Commerce "impermissibly modified the plain meaning of the finished merchandise exclusion, to contain on one entry, all of the "part" to "fully and permanently assembled and complete finished merchandise" Appx 052.

CCM contended that such a requirement is in opposition to the finished merchandise exclusion which requires that finished merchandise contain extrusions as parts of the following permanently assembled at the time of entry.  Further CCM contended that the second part of the three-part analysis in the decision was contrary to the plain language of the order that required the final finished merchandise to contain all of the Echo Fasten components to be "fully and permanently assembled and completed at the time of entry.  The plain language of this exclusion contains no such requirement which was added by the Department."  In other words, CCM stated

that Commerce modified the language of the order contrary to *Duferco* which contention the court ignored.

In its Reply Brief at p.5-9, CCM contended that "the Department (1) changed the word 'part' in the finished merchandise exclusion to 'product,' and (2) added the word 'final' to the finished merchandise exclusion" to require at all of the Eco Fasten be imported together.

## V.    A CONSIDERATION BY THE FULL COURT IS NECESSARY TO SECURE AND MAINTAIN UNIFORMITY OF THE COURT'S DECISIONS REGARDING THE UNAMBIGUOUS PLAIN LANGUAGE RULE

"If the scope is unambiguous, the plain meaning of the Orders' language governs." *See Duferco Steel*, 296 F.3d at 1095; *see also Whirlpool III*, 890 F.3d at 1308. "If Commerce determines that the language at issue is not ambiguous, it states what it understands to be the plain meaning of the language, <u>and the proceedings terminate</u>." *See ArcelorMittal*, 694 F.3d at 84. Solar panels are clearly identified as the exemplar of finished merchandise exclusion. AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654 ("The scope also excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and <u>solar panels</u>"). The solar panel mount assemblies in this appeal were clearly encompassed

in the finished merchandise exclusion but still suffered different treatment.).

In the CCM CAFC decision, Judge Chen wrongfully determined that "solar panel mounts are undisputedly not solar panels." *See* Op. at *11. Although neither party challenge whether the term "solar panel" is ambiguous or not, CCM solar panel mount assembles obviously are akin to "solar panels" in this exemplar of the finished merchandise exclusion. Therefore, the panel failed to adopt the unambiguous plain language of the Orders and wrongfully determined that "solar panel mounts are undisputedly not solar panels" when they are akin to solar panels used in a solar panel system.

## VI.    A CONSIDERATION BY THE FULL COURT IS NECESSARY TO SECURE AND MAINTAIN UNIFORMITY OF THE COURT'S DECISIONS THAT "A FINAL ORDER MAY NOT BE INTERPRETED 'IN A WAY CONTRARY TO ITS TERMS,' NOT IN A WAY 'SO AS TO CHANGE THE SCOPE OF THAT ORDER."

Although Commerce "enjoys substantial freedom to interpret and clarify its antidumping duty orders …, it may not change them." *See Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995), *as corrected on reh'g* (Sept. 1, 1997). "Accordingly, a final order may not be interpreted 'in a way contrary to its terms,' not in a way 'so as to change the scope of that order.'" *See Whirlpool III*, 890 F.3d at 1308 (citing *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990) and *Eckstrom Indus., Inc. United States*, 254 F.3d

1068, 1072 (Fed. Cir. 2001)).

In Columbia Third Remand Redetermination, Commerce defined that, in order to exclude from the Orders under finished merchandise exclusion, the door threshold assemblies must (1) contain extruded aluminum and non-extruded aluminum components; and (2) are fully assembled and completed at the time of entry. Commerce concluded that Columbia's door thresholds satisfy both criteria for the finished merchandise exclusion. *Id.* Therefore, Commerce concluded under protest that "Columbia's entire door thresholds—including both the extruded aluminum and non-extruded aluminum parts—are excluded, on remand, from the scope of the Orders under the finished merchandise exclusion."

However, in the CCM Scope Decision, Commerce determined contrary to the unambiguous language of the order that CCM's solar mounts are intermediary products that require incorporation in a downstream product to function, thus, as solar panel mounting system. "We find … at the time of entry into the United States the solar mounts do not constitute a fully and permanently assembled and completed solar panel mounting system." Appx 052 Commerce modified the Orders by requiring that the finished merchandise exclusion work in conjunction with other components of the solar panel system. Commerce thus unreasonably and unlawfully modified the plain meaning of the Orders.

For the foregoing reasons, CCM respectfully requests that this Court grant the

Rehearing *En Banc*.

Dated: May 13, 2022

Respectfully submitted,
/s/ George R. Tuttle Sr.
George R. Tuttle Sr.
Law offices of George R. Tuttle, A PC
3950 Civic Center Drive, Suite 310
San Rafael, California 94903
Telephone: (415) 986-8780

Attorney for Plaintiffs-Appellants
*China Custom Manufacturing LLC*
*And Greentec Engineering*

# United States Court of Appeals for the Federal Circuit

———————————

**CHINA CUSTOM MANUFACTURING INC., GREENTEC ENGINEERING LLC,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendants-Appellees*

———————————

2022-1345

———————————

Appeal from the United States Court of International Trade in No. 1:20-cv-00121-SAV, Judge Stephen A. Vaden.

———————————

Decided: March 2, 2023

———————————

GEORGE REID TUTTLE, III, Law Offices of George R. Tuttle, A Professional Corporation, San Rafael, CA, argued for plaintiffs-appellants. Also represented by GEORGE R. TUTTLE.

JAMIE SHOOKMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee United States. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; SAVANNAH MAXWELL, Office of the Assistant Chief Counsel for Trade

Enforcement and Compliance, United States Department of Commerce, Washington, DC.

ROBERT E. DEFRANCESCO, III, Wiley Rein, LLP, Washington, DC, argued for defendant-appellee Aluminum Extrusions Fair Trade Committee. Also represented by DERICK HOLT, ELIZABETH S. LEE, ALAN H. PRICE, JOHN ALLEN RIGGINS, ENBAR TOLEDANO.

_____

Before NEWMAN, CHEN, and CUNNINGHAM, *Circuit Judges*.

CHEN, *Circuit Judge*.

China Custom Manufacturing, Inc. and Greentec Engineering, LLC (collectively, CCM) appeal a decision by the United States Court of International Trade (trial court) sustaining a final scope ruling by the Department of Commerce (Commerce) that found CCM's solar panel mounts are subject to antidumping and countervailing duty orders covering aluminum extrusions from the People's Republic of China. Commerce and the trial court concluded that the solar panel mounts are not eligible for the orders' "finished merchandise" exclusion because the mounts are just one component of a downstream product—i.e., a solar panel mounting system. Because the trial court's decision is supported by substantial evidence and is in accordance with law, we affirm.

BACKGROUND

I

In 2011, Commerce issued antidumping and countervailing duty orders covering aluminum extrusions from the People's Republic of China (Orders). Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 Fed. Reg. 30,650 (May 26, 2011); Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 30,653 (May 26, 2011).

The Orders define as subject merchandise "aluminum extrusions which are shapes and forms, produced by an extrusion process, made from" specified aluminum alloys. Antidumping Duty Order, 76 Fed. Reg. at 30,650.[1]  The Orders further provide:

> Subject aluminum extrusions may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, window frames, door frames, solar panels, curtain walls, or furniture. Such parts that otherwise meet the definition of aluminum extrusions are included in the scope. The scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise unless imported as part of the finished goods "kit" defined further below.

*Id.* at 30,650–51.  The Orders contain several exclusions from their scope, and two are pertinent here.  The "finished merchandise" exclusion states:

> The scope . . . excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with

--------

[1]     The Orders recite the same scope, and the language of the Orders is materially the same for present purposes. *See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1358 (Fed. Cir. 2019); *Whirlpool Corp. v. United States*, 890 F.3d 1302, 1305 n.1 (Fed. Cir. 2018) (citations omitted).  Thus, for ease of reference, we cite to only the Antidumping Duty Order.

glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

*Id.* at 30,651.  The "finished goods kit" exclusion states:

The scope . . . excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished goods kit."  A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product.

*Id.*

## II

We have interpreted the Orders' scope on multiple occasions, and two of our prior opinions are relevant here.  In the first case, we considered the Orders' scope as to the finished merchandise exclusion.  There, the plaintiffs argued that their curtain wall units qualified for the finished merchandise exclusion because each unit was fully and permanently assembled and completed upon entry into the United States.  *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1358 (Fed. Cir. 2015) (*Shenyang I*).  Commerce disagreed, finding that the curtain wall units were not a "complete product upon entry" and instead were "designed to be attached to other units to eventually form a completed curtain wall."  *Id.*  The trial court sustained Commerce's determination, explaining that "[c]urtain wall units are [] undeniably components that are fastened together to form a completed curtain wall.  Thus, they are 'parts for,' and 'subassemblies' for, completed curtain walls."  *Id.* (alterations in original) (citation omitted).  We affirmed, holding that "[a] part or subassembly, here a curtain wall unit, cannot be a finished product."  *Id.*

In the second case, which again involved curtain wall units, we considered the Orders' scope as to the finished goods kit exclusion. There, the "only remaining issue" was "whether [the curtain wall units] are excluded when viewed (correctly) as subassemblies." *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1367 (Fed. Cir. 2019) (*Shenyang II*). We first agreed with Commerce that the Orders only exclude subassemblies when imported as part of a finished goods kit. *Id.* We then agreed with Commerce that the curtain wall units at issue were ineligible for the finished goods kit exclusion because they were not a "packaged combination" of all the pieces needed to assemble the curtain wall (i.e., the final finished good) at the time of importation and were not ready for installation "as is." *Id.*

Together, these cases explain that (1) parts or subassemblies are not finished products and thus cannot qualify for the finished merchandise exclusion, (2) subassemblies may be excluded from the Orders' scope only if they are imported as part of a finished goods kit, and (3) merchandise qualifies for the finished goods kit exclusion only if it contains a packaged combination of all of the required components at the time of importation and is ready for installation as is.

## III

On October 4, 2019, CCM requested Commerce determine whether its "Rock-it Mount 3.0" solar panel mounts are excluded from the Orders' scope. J.A. 227; J.A. 495. CCM explained that its solar panel mounts are used with other parts and components in a downstream structure, the "EcoFasten 3.0 Rock-it System,"[2] to mount solar panels

---

[2]    CCM's request also refers to the solar panel mounting system as, for example, the "EcoFasten Rock-it 3.0 solar panel mounting system," J.A. 228; the "EcoFasten

on a roof. J.A. 231–35; J.A. 495–97. CCM asserted that its mounts qualify for the finished merchandise exclusion because the mounts are "fully and permanently assembled and complete at the time of entry [and] ready for installation as EcoFasten Rock-It 3.0 solar panel mounting system, a downstream structure." J.A. 228–31.

## IV

On May 14, 2020, Commerce issued a final scope ruling that found CCM's solar panel mounts are composed of aluminum extrusions subject to the Orders' scope and that the mounts are ineligible for the finished merchandise and finished goods kit exclusions. J.A. 36, 50, 54–55. According to Commerce, the solar panel mounts "would not constitute finished merchandise because, at the time of entry into the United States, the solar mounts do not constitute a fully and permanently assembled and completed solar panel mounting system." J.A. 52. Instead, the solar mounts "are subassemblies comparable to the merchandise at issue in [*Shenyang I*]" because the mounts "are designed to be part of a downstream final product, just as curtain wall units were designed to be part of the final product, a curtain wall." J.A. 53–54. Thus, Commerce found CCM's solar panel mounts ineligible for the finished merchandise exclusion because "the solar mounts are not themselves finished merchandise which perform a function independent of the complete solar panel mounting system." J.A. 54. Separately, Commerce also determined that the solar panel mounts "do not constitute finished goods kits because, upon entry into the United States, they do not include all parts

---

Rock-It System 3.0," J.A. 230; the "Eco Fasten Rock-it System 3.0," J.A. 495–96; and the "Rock-It System 3.0," J.A. 496. We understand these terms to be interchangeable references to the same solar panel mounting system.

necessary to fully assemble a finished solar panel mounting system." J.A. 52.

## V

CCM sought review by the trial court, arguing that its mounts qualify only for the finished merchandise exclusion and not the finished goods kit exclusion. *China Custom Mfg., Inc. v. United States*, No. 20-cv-00121, 2021 WL 5822715, at *6 (Ct. Int'l Trade Dec. 6, 2021). The trial court affirmed Commerce's final scope ruling, explaining that "Commerce correctly applied the litany of Federal Circuit precedents interpreting the Orders to the solar mounts presented to it for review." *Id.* at *10. Citing CCM's explanation that its solar panel mounts require other components to form the solar panel mounting system, the court concluded that the "solar mounts themselves are not finished merchandise but rather [are] a part or subassembly of the finished merchandise — the solar panel mounting system — and as such do not qualify as finished merchandise excluded from the scope of the Orders." *Id.* (citing *Shenyang I*, 776 F.3d at 1358–59).

CCM timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the trial court's decisions de novo and apply anew the same standard it used. *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308 (Fed. Cir. 2020) (en banc) (citations omitted). Under that standard, we "must uphold Commerce's determinations unless they are unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id.* (internal quotation marks and citation omitted). Although our review repeats much of the trial court's work, we do not ignore the trial court's informed judgment. *Id.* (citation omitted). We also give substantial deference to Commerce's interpretation of its own duty orders "because the meaning and scope of those orders

are issues particularly within the expertise and special competence of Commerce." *Id.* (cleaned up) (citations omitted). A decision is supported by substantial evidence if "a reasonable mind might accept it as adequate to support a conclusion." *Id.* (cleaned up) (citation omitted).

This appeal is governed squarely by our holding in *Shenyang I* that "[a] part or subassembly . . . cannot be a finished product." 776 F.3d at 1358. CCM conceded to the trial court that its solar panel mounts are parts or subassemblies of its solar panel mounting system. *See* J.A. 1064 ("[T]he Eco Fasten mounts are installed with . . . other identified components and solar panels to function as the downstream solar panel mounting system. . . . The mounts are clearly 'parts' of this solar panel system . . . ."); J.A. 1090 ("[W]hen we refer to the Rocket 3 Solar mounts, we were referring to it as a subassembly, that is, as a part of a greater whole in which it's used."). CCM also conceded that the mounts have no use outside of the specific solar panel mounting system—i.e., the EcoFasten 3.0 Rock-it System. *See* J.A. 1092 ("THE COURT: Does this mount – is it solely for use in the Rocket 3.0 kit? . . . [COUNSEL]: I don't have an answer to that. But I believe that it's useful [in] only the Rocket 3 kit . . . ."). Thus, like the curtain wall units in *Shenyang I*, CCM's solar panel mounts are "undeniably components that are fastened together to form a completed [solar panel mounting system]." 776 F.3d at 1358 (citation omitted). CCM's solar panel mounts are parts or subassemblies and thus cannot be a finished product and cannot qualify for the finished merchandise exclusion.

CCM argues that our holding in *Shenyang I* was limited to the curtain wall units at issue there and cannot be applied to the solar panel mounts at issue here. Appellant's Br. 28; Appellant's Reply Br. 12–13. We disagree. Our holding in *Shenyang I* was based on the language of the Orders. Indeed, the statement that CCM's argument relies on—that a "part or subassembly, here a curtain wall

unit, cannot be a finished product"—is divided into the legal conclusion ("a part or subassembly . . . cannot be a finished product") and the application of that legal conclusion to the facts ("here a curtain wall unit").  776 F.3d at 1358.

CCM tries to reinforce its argument that *Shenyang I* is not precedential by pointing to a statement by the trial court in an unrelated proceeding that *Shenyang I* did not control the outcome in that specific proceeding.  Appellant's Br. 26–28 (citing *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 279 F. Supp. 3d 1209, 1212 n.3 (Ct. Int'l Trade 2017)).  CCM misunderstands the trial court's statement.  In that case, the plaintiffs argued that their curtain wall units qualified for the finished goods kit exclusion, and defendant-intervenors responded that *Shenyang I* controlled the outcome.  *Shenyang*, 279 F. Supp. 3d at 1212 & n.3.  The court disagreed with the defendant-intervenors because *Shenyang I* evaluated only the Orders' finished merchandise exclusion and did not address the finished goods kit exclusion.  *Id.* at 1212 n.3.  Thus, the trial court did not state that *Shenyang I* is not precedential.  It stated that the holding of *Shenyang I*, which addressed only the finished merchandise exclusion, did not foreclose the finished goods kit exclusion arguments before it.

Unable to convince us that *Shenyang I* does not apply, CCM asks us to overturn its holding.  CCM fails to convince us that we should.  CCM initially contends that the holding of *Shenyang I* is "contrary to the plain language of the [finished merchandise] exclusion," which excludes from the Orders' scope "parts" that are "fully and permanently assembled and completed at the time of importation."  Appellant's Br. 18–21, 29; Appellant's Reply Br. 5.  Not only is this the same argument that the plaintiffs made and that

we rejected in *Shenyang I*, 776 F.3d at 1358, it also misreads the exclusion, which states:

> The scope . . . excludes <u>finished merchandise containing</u> *aluminum extrusions as parts that are fully and permanently assembled* and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

Antidumping Duty Order, 76 Fed. Reg. at 30,651 (emphases added). CCM focuses on the italicized portion and ignores the underlined portion. The Orders exclude finished merchandise *containing* aluminum extrusions as parts that are fully and permanently assembled, not the parts themselves.

CCM also asserts that Commerce rewrote the Orders' plain language when Commerce found that subassemblies cannot be excluded under the finished merchandise exclusion. Appellant's Br. 25; Appellant's Reply Br. 11. CCM again ignores our precedent and misreads the plain language. In *Shenyang I*, we held that subassemblies cannot qualify for the finished merchandise exclusion. 776 F.3d at 1358. We reiterated that holding in *Shenyang II*, where we agreed with "Commerce's straightforward reading" that subassemblies can be excluded only under the finished goods kit exclusion. 918 F.3d at 1367. Further, the Orders' plain language supports our prior decisions, as it states that "[t]he scope includes the aluminum extrusion components that are attached (e.g., by welding or fasteners) to form subassemblies, i.e., partially assembled merchandise *unless imported as part of the finish goods 'kit'* defined further below." Antidumping Duty Order, 76 Fed. Reg. at 30,651 (emphasis added). A straightforward reading of the plain language confirms, contrary to CCM's argument, that subassemblies are included in the Orders' scope and may be excluded only if imported as part of a finished goods kit.

CCM next avers that Commerce's final scope ruling merged the finished merchandise and finished goods kits exclusions by requiring all EcoFasten components to be fully and permanently assembled at the time of entry, thus requiring a complete "final finished product" for the finished merchandise exclusion rather than a "part." Appellant's Br. 23–24; Appellant's Reply Br. 5–9. First, we fail to see how Commerce merged the two exclusions. Commerce explained that CCM's solar panel mounts (1) were not eligible for the finished merchandise exclusion because the mounts do not constitute a fully and permanently assembled and completed solar panel mounting system, and (2) were not eligible for the finished goods kit exclusion because the mounts do not include, upon entry into the United States, all the parts necessary to fully assemble a finished solar panel mounting system. J.A. 52–53. Thus, Commerce kept the two exclusions separate. Second, Commerce did not err in using the phrase "final finished product" to describe finished merchandise. The Orders use that same phrase to explain that "parts for *final finished products*" are included in the Orders' scope, Antidumping Duty Order, 76 Fed. Reg. at 30,650–51 (emphasis added), and we used a similar term in *Shenyang I* when we explained that a "part or assembly . . . cannot be a *finished product*," 776 F.3d at 1358 (emphasis added). Thus, Commerce did not impermissibly change the word "part" to "final finished product" in the finished merchandise exclusion.

Finally, CCM notes that solar panels are explicitly excluded from the Orders' scope and asserts that Commerce, contrary to the facts of record, erred in finding that solar panels are added after the mounting system was assembled rather than added in an intermediate step in the assembly of the EcoFasten 3.0 Rock-it System. Appellant's Br. 21–23. First, solar panel mounts are undisputedly not solar panels, and thus whatever the Orders may say about solar panels is not material to whether solar panel mounts are excluded. Second, the sequence in which solar panels

are added to the mounting system does not affect our analysis. The solar panel mounts at issue are parts or subassemblies for a downstream product—the EcoFasten solar panel mounting system—and thus are not a finished product that qualifies for the finished merchandise exclusion.

## CONCLUSION

We have considered CCM's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.[3]

## **AFFIRMED**

---

[3]   Defendant-Appellee Aluminum Extrusions Fair Trade Committee (AEFTC) moved to strike portions of CCM's corrected opening brief that AEFTC alleged were substantive corrections made without leave of the court. AEFTC's Br. 44–47. At oral argument, AEFTC's counsel stated that the court need not reach the motion to strike if it affirms on the merits. Oral Arg. 32:53–33:22. In light of our decision, AEFTC's motion to strike is denied as moot.

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Combined Petition for a Panel Rehearing and Petition for En Banc Review under the Federal Rule of Appellate Procedure Rule 25(b) and (h) of Plaintiff-Appellant, China Custom Manufacturing Inc., Greentec Engineering LLC, complies with the relevant type-volume limitation of the Federal Rules of the Appellate Procedure and Federal Circuit Rules.  It was prepared using a proportionally-spaced typeface and includes 4,098 words.

/s/ George R. Tuttle Sr.
George R. Tuttle Sr.

March 31, 2023